May it please the court, my name is Eric Seitz and with me at the council table is my associate, Della Al-Baladi, and we represent the plaintiff appellate, in this case, Jonathan Ritchie. As you know, on August 26, 2006, baby Gregory Ritchie was born prematurely, survived for approximately 30 minutes, and then died. His death was entirely preventable. The only question here we contend is whether the United States had a duty to Gregory and his civilian father to act reasonably to prevent his death. The government argues that the 1950 decision of the Supreme Court in the Ferries case bars any recovery here, and that the facts are sufficiently similar to the Monaco decision of this court in 1981 to bar any liability of the United States under the Federal Tort Claims Act. We respectfully disagree. Could we get right to that point in how you would distinguish Monaco or persons in this particular case? Well, Monaco, first of all, involved an injury to the service member that had occurred some 30 years earlier when he was exposed to radiation. In Monaco at that time, there was no contemplation that anything the government was doing that might have exposed this service member to danger would affect his future children. There were no children contemplated. In our case, there was a child who was in utero, and we rely upon all of those in utero cases which we've cited to you repeatedly. The government knew, the Army knew, that this child was there and was at risk, and yet they failed to do what was reasonable, minimally reasonable, to ensure that the interests of that child were protected. Now, in this case, Judge Seabright, I concede, did a very careful analysis, but I think where the analysis goes wrong is that it fails to recognize that the child unborn and the father of that child, a civilian, had rights and interests that were at stake here. And in the in utero cases, the courts that have decided those cases, and I don't know that there is one in the Ninth Circuit, have basically held that there has to be some recognition of the interests and rights of the civilian child and of the parent who is a civilian. You're talking about the Fourth Circuit cases and the Sixth Circuit cases. We don't have a Ninth Circuit case. That's correct. All right. We have, as close to that, is I think the Atkinson case, in which the Court did at least tacitly approve of a resolution where there was a recovery, albeit by settlement, in behalf of the child, although any recovery in behalf of the mother was denied. Understandably, and we don't take issue with that, but we do believe that there is a certain point at which it is necessary for the courts to recognize that it is not just simply the service members' interests who are at stake in these cases, and that for all of the reasons underlying Farris at the time it was decided in 1950, for all of the criticisms that have been made of the Farris decision since then, including decisions by this Court, that every effort ought to be made not to apply the Farris exclusion in a Federal Tort Claims Act where somebody has been injured who is a civilian. Does it pose any problem for you that in this case the child could not have been injured but for activities by the mother? No, it really doesn't pose a problem. And I understand that's the language, the general language of Bonacco. And I understand, generally speaking, but it doesn't pose a problem here because first of all, there's no evidence that the mother was injured. In fact, that's part of the findings of the trial court. And the injury here was to the child because the mother was injured. So there's really no necessity. Now if you go back to Farris, there were three reasons underlying the Farris decision that were articulated by the Supreme Court. One was that this was at a point in time where the Federal Tort Claims Act was new and they wanted to have consistency, so consistency was important. Secondly, there was a concern that you not interfere with discipline in the military. And thirdly, there was a recognition at that point in time that there were other benefits available to the service member. Let me take you back to your point. You said there was no injury to the mother. Yes. Did the mother deliver early? The mother did deliver early because she had a propensity, she had a weak cervix. Yes. But she was not injured. She was stressed and that caused the termination of the pregnancy. To be honest with you, Judge Farris, I would compare this to a forcible abortion. In a way, what happened to her caused this baby to be aborted. And I don't think there's any way that we can describe it accurately in other terms. And that is not conduct under any circumstances which ought to be uncompensated. And as I started to say, there is no other compensation available here to this baby. In terms of Farris, if you compare the purposes, there were no benefits available here. There was a very small funeral and burial benefit that was available to the family. But there's no other compensation for the loss of this child. Let me make sure that I understand your argument. Are you saying that the meaningful distinction that you're drawing between the facts of this case and the facts of Monaco is that in this case there was no injury to the mother? That is one part of it. The basic distinction is that the real plaintiff here was not the mother. The real plaintiff is the child and the child's representative, not the mother. Secondarily, as in a number of the other cases that we have cited to you, and particularly I would call to your attention the Romero case out of the Fourth Circuit, there was no injury to the mother here. That's correct. If we reject the notion that ordering a woman to engage in activities that she was not able to handle due to her pregnancy, that caused the premature delivery of her baby, we reject the notion that that did not result in injury to the mother, then would you lose? No, I don't think so, because I still think that there is a duty that arises at some point under the totality of the circumstances, which is the test this circuit has applied, there is a duty that arises at some point to protect the interests of the son-born child that has to be recognized. And that is fundamentally what underlies the decision in these six cases that we've cited involving other infants that were harmed. Right, and let me get you back to the Ninth Circuit precedent, setting aside these in the Ninth Circuit, but we have our own precedents that we need to deal with. If we assume that the mother was injured by the order to engage in these exercises, wouldn't you run into a problem under our current precedent? Because then the baby's injuries are then derivative to the mother's, or even under the Genesis test that was set out by persons, and you would have a problem, wouldn't you? Well, I think there is an issue, but I also think, consistent with the way this court has attempted to limit the application of the Ferris test, that I don't think it entirely allows you to rule out the interests of the plaintiff. And in this case, the plaintiff is not the mother. And that is because there are several tests and several criteria that have been applied. And if, in fact, it is because there was an injury to the mother and that somehow, by acknowledging that injury, this court, by allowing this case to proceed, would be interfering with military functions in some manner, I dispute that. Because these are not the kind of military activities which Ferris was intended, in any manner, to prevent from the federal court's analysis and intervention into. And, indeed, if you go back to 1950, that case was decided, and Monaco, even in 1980, was decided at a point in time when the military was still considered by the federal courts to be largely immune from any kind of jurisdiction and questioning of how they conducted their affairs. That is no longer, really, the prevailing ideology. At this point in time, the federal courts have used a range of areas to question how the military conducts its affairs. And I know, I brought an average, I would say, of five to ten cases a year in the federal courts here, many of which have been resolved in the Ninth Circuit, on a range of issues pertaining to military services, personnel matters, disability matters, even matters involving the conduct of court-martial proceedings. So that is no longer the ideology any longer. If, in this case, the military simply was negligent and caused a mother to undergo stress that caused her to abort a child, that is not the kind of injury which, in my view, ought to be immunized from recovery. It is the kind of thing which can be so easily prevented in this period of time, and it is the kind of thing for which the military ought to be responsible for this, ought to be held to account for why they did not recognize that there were serious risks to the life of this child and to this family, irrespective of any military obligations that mom might have been called upon to perform. This was a medical decision, was it not? Not a military discipline decision? Absolutely. This was handled as a medical matter from its inception, and the Army was fully aware of what the risks were and chose to ignore them, and that is what the record discloses. I would then reserve the rest of my time. Thank you. All right. Thank you. May it please the Court, I am Lowell Sturgill from the Department of Justice on behalf of the United States. We believe that the District Court correctly held that the Monaco case does control this case and is not distinguishable. Monaco, this Court said, that the Farrer's Doctrine bars FDCA claims on behalf of children alleging prenatal or in utero injuries if the claim would require the Court to assess the relationship between the service member, mother, and the service. And we know that that single factor, which is under Monaco, is present here because the plaintiff alleges that the child died prematurely because of command decisions that the Army allegedly made with respect to the mother. The decisions were, first of all, what kind of training was appropriate for this person. She was allegedly given normal battle-related training as opposed to the training that plaintiffs alleged would be appropriate. And second, what were her duties? Plaintiffs said, you're trying to... Are you claiming this is a derivative act? In other words, even if the mother was not injured, that the fetus had no independent status as an individual human being? Under state law, Hawaii law, the fetus does have an independent state law cause of action. Now the question is, for the purposes of the Farrer's Doctrine, even though that's the case, the Farrer's Doctrine bars this claim under Monaco if it has a genesis out of the relationship between the service and the service member, mother. And that this Court also reaffirmed that test in persons, which you've already discussed. So the key again is not whether the plaintiff has an independent cause of action under state law. The child would. Does the injury have its chance to single factor test? And here it does. Now the plaintiffs have said this morning that they believe that Monaco is distinguishable, because if I have it right, at the time that the service member in that case was exposed to radiation, it wasn't contemplated that there might be children. Well, three things to say about that. First of all, the plaintiffs didn't say that at all. What the opinion says is there's a test. If the child is involved and the injuries occurred related to the birthing process or the in-human process, would the claim require the government to scrutinize the relationship between the service member and the service? And that's satisfied here. So again, that was not part of the opinion. Second thing, it's obvious to all that service members who are young may very well decide to have children. So the point doesn't even make sense in terms of just common sense. And then third, you basically have the test from the opinion, and you have this from our brief, but it's 661 F 2nd at 134. The test is whether the court still must examine the government's activity in relation to military personnel on active duty. Why isn't this more like the in utero cases? We have none in the Ninth Circuit. Why do any of the Ninth Circuit cases indicate that we cannot apply the same law as applied in the in utero cases, say in the Fourth Circuit or the Sixth Circuit? Well, first of all, I don't understand why this isn't an in utero case. Where did the injuries to this child happen? They had to happen in utero. And the claim again is, there's no claim in this case that the child was born, and then the military did something to the child that caused the child to die. The claim in this case is the military did something to the mother, and that whatever that was caused the child to be born prematurely. Well, why isn't this an irregularity to the child? That had to happen in utero. So, again, the distinction I don't think makes  But if you say it's a child in utero, maybe concurrent activities here, one with respect to the mother, one with respect to the child. Why isn't the act with respect to the child independent of that with respect to the mother? Well, again, because Monica says that's not the test. In this circuit, you don't look at whether there could be some independent duty to the child that was violated. You just see, well, what's the allegation? Here the allegation is that the military inappropriately assigned the mother training duties that were not appropriate for her, and work duties that were not appropriate for her. That is the claim. And that claim goes to the mother, not the child. Given our circuit's precedent, including Monaco, if a child who was born with genetic defects cannot recover or is barred by the Ferris Doctrine from asserting a claim because of military action taken toward her father, then how can a child injured in utero assert a claim? So in order to prevail, the plaintiffs would have to draw a meaningful distinction between the facts of this case and the facts of Monaco. And I think they've attempted to do that by characterizing this issue as a medical decision that then was directed towards the child and injured the child. Why is that not a reasonable distinction that takes this case outside of Monaco? Well, first of all, it doesn't reflect the facts. This is not a case where the plaintiffs are doing this. What they're alleging is that the service member superior gave her inappropriate duty orders and inappropriate training orders. That goes to the core, the very core of the Ferris Doctrine. Yes, but in this case, the military knew what the doctor said, that this activity would be injurious to the child. Doesn't that distinguish this from Monaco? It doesn't because several things. First of all, there are several cases in addition to Monaco in which this court has addressed and held that the Ferris Doctrine barred claims that were independent under state law with respect to spouses and children at the time that they were alive and would have been contemplated by and the actions with respect to the parent. For example, Judge, this is not lost on anybody, but Judge Nelson, you wrote both persons in Monaco. And in persons, you remember there was a duty to warn claim. And the claim was that the military failed to warn the spouse, not only the husband, but the spouse who was a civilian and alive, failed to warn the spouse that the husband who was a service member was suicidal. That's an independent cause of action under state law. But this court held that the Ferris Doctrine barred that because it would require this court to, again, evaluate the relationship between the service member, husband, and the service. So again, even though you had a living, existing spouse and child, there was a child in that case too, the Ferris Doctrine barred that claim, who were clearly contemplated under the independent cause of action under state law. They had, the government had an independent state duty to them. Ferris still barred the case. And Van Sickle was the first case that the court addressed. She had wrongful death claims on behalf of a spouse. And that's considered independent under the state law. The spouse was alive and contemplated by what was going on at the time of the tort. It didn't matter. Krozinski is the same thing. There you had a negligent typing of the service member's semen sample. The allegation was a negligent vasectomy. And the particular claim was that the doctors had failed to correctly analyze this. And again, the holding was the spouse, who was alive, and the government had an independent state law duty to the spouse, couldn't sue because the claim had its genesis in the relationship between the service member and the service. And that's exactly what you have here. So this is not a case in which you're writing on a blank slate. In fact, the facts of the case, even if this is not the case, and you should look more closely at the facts, this is what the record shows. First of all, the record shows that the plaintiffs themselves alleged that the service member mother did not have a high-risk pregnancy until the military allegedly assigned her inappropriate duties. That is page 13 of the supplemental excerpts of record. So the whole thing started. And she was injured, they allege, by the fact that the military at the very beginning assigned her inappropriate duties. Second thing is, the allegation here is that the military caused her to have an incompetent cervix. That is an injury. And what happened then is she went in, their allegation is she's got the incompetent cervix. At that point, the military did not allow her to assign her proper duties and training. So they sutured, they did an emergency cervical circlage, they put sutures in. That is an injury to the mother. She's having to sustain surgery because of allegations of what her military commanders did. And then finally, page 12 of the supplemental excerpts of record, she alleges that she sustained pain, which is no surprise, given what the allegations are. If you're going to go in for an emergency circlage, you're going to have pain. And so even if you look past what we think is the test that you've given out in both Monaco and Persons and Grozinski and Van Sickle, you have undisputed facts based on the plaintiff's own allegations that satisfy any test, even the ones that they present. Well, I think that actually covers everything that we had to present. But again, I think, really again, two points. You have the test. And if I could again address Persons itself, 925 F. 2nd at 298. And if I could quote, Fares allows a claim if the alleged conduct was directed exclusively at the dependents, that's one part of the argument. But then the opinion goes on. And it picks up the language from Monaco and it says, and it does not involve military decision making toward enlisted personnel. Here, that's what you have. You have military decision making, the assignment of duties, the assignment of training toward enlisted personnel. And that is what the plaintiffs allege caused the premature birth. Not some medical decision or some decision that was made after the child was born. These decisions were made by commanders. They were made before the child was born, while the child was in utero. And they go to the very core of the Fares Doctrine. If there are no other questions, we would ask the Court to affirm the judgment below. Thank you, Counsel. Just briefly. Of course, January Ritchie had some pain. Of course, she went through a lot of agony as a consequence of this. But we are not here seeking damages for her. We are here basically saying that at some point in time, the   mother's duty to her unborn child and to the father of that child, not to take actions to harm that child who was, at this point in time, several months developed in her uterus. And that is simply all we are saying. In all of the in utero cases that we have cited to you, the mother has suffered pain. The mother has suffered injuries. But the courts carved out exceptions and did not apply Fares to the injuries of the child. And in some of those cases, the child survived. And in some of those cases, the child did not. And the damages that were awarded were awarded because there was clear negligence, a child suffered harm, and there was a claim that was viable and justifiable by all tort principles but for the application of the Fares Doctrine. Would we, if we decided, as you are urging, have to expand the doctrine? The Fares Doctrine? We'd have to expand it? Yes. I don't think you have to expand it at all, Judge Fares. I think that you can simply do what this court has done and what other courts have done over and over again since 1950. They have limited the Fares Doctrine to circumstances where it is clear that the military would be negatively and adversely affected if the claim were granted. In this case, however, I think there are lots of reasons why the Army should be held to a higher standard of conduct when it comes to protecting pregnant soldiers, especially the unborn children of those pregnant soldiers. And that's all we're asking you to do. Is there a difference between legal malpractice cases where doctors making decisions directly with the mother, as in Romero, for example, failing to recognize that there was an incompetent cervix problem? Is there a difference between those cases and this particular case involving an examination of the military's order? As I look at the excerpt of record cited by the government, was January a high-risk pregnancy before physical exercises and other duties were required? And the answer was no, she was not a high-risk pregnancy until the military put her through these vigorous exercises and essentially put stress on her body. So how do you distinguish those two scenarios, one involving a decision between the doctor and the patient versus this one, which seems to be much more to be directly implicating the military's action towards your client? First of all, in both scenarios, it is a Federal Tort Claims Act issue. The Federal Tort Claims Act covers negligence. It doesn't differentiate between medical malpractice and negligence in other forms. So there is not a carve-out for medical malpractice cases when it comes to pursuing a Federal Tort Claims Act case. Secondly, with respect to the facts in this case, we do contend that at least for the major portion of her pregnancy, January's pregnancy was not abnormal or extraordinary, but it certainly became that way and the doctors quite clearly diagnosed and warned what would happen if appropriate steps were not taken. Once that happened, then I think a duty arose. I don't think that duty is any different than if some other duty had been breached by the doctors themselves in terms of failing to provide proper care at some stage in the proceedings. The duty was the same. The duty was to act in a non-negligent manner towards somebody who couldn't protect himself, and that clearly did not happen here. All right, Counsel. Mr. Ferris, any more questions for Judge Nelson? All right, thank you very much. Thank you. The case of Ritchie v. United States is submitted.
judges: Farris, Nelson, Nguyen